The BRUNSWICK BEACON, INC., Appellee,

v.

SCHOCK–HOPCHAS PUBLISHING CO., d/b/a Brunswick Free Press, Bernard Charles Hopchas, Priscilla S. Hopchas, Caroline Schock, Appellants (Two Cases).

The BRUNSWICK BEACON, INC., Appellant,

v.

Caroline SCHOCK, Appellee.

and

Schock-Hopchas Publishing Co., d/b/a Brunswick Free Press, Bernard Charles Hopchas, Priscilla S. Hopchas, Defendants.

Nos. 85–1389, 85–1733 and 85–1784.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 7, 1986.

Decided Jan. 23, 1987.

Rehearing and Rehearing En Banc Denied March 24, 1987.

---

K.K. Hall, Circuit Judge, filed a dissenting opinion.

Judges Hall, Widener, Murnaghan, Sprouse and Wilkins would have granted rehearing en banc.

Larry L. Coats (Mills & Coats, P.A., Raleigh, N.C., on brief), for appellants.

W. Thad Adams, III, Charlotte, N.C., for appellee.

Before HALL and PHILLIPS, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.

HAYNSWORTH, Senior Circuit Judge:

The contestants in this action are two small, competing, weekly newspapers in the town of Shallotte in eastern Carolina. The defendants, publishers of *The Brunswick Free Press,* copied and ran ads that previously appeared in *The Brunswick Beacon,* published by the plaintiffs. They did so with the consent of the advertisers, but at much lower rates than those charged by the *Beacon.* The copying continued after fruitless protests and an unfulfilled promise that the defendants would inform advertisers of the *Beacon*'s copyright claim and would not run copies of ads for which the *Beacon* claimed to be the copyright owner.

This action sought redress for statutory infringement of the copyright on three ads run by the *Beacon.* The heart of the controversy is whether the *Beacon,* whose employees designed the ads and prepared the layouts, had the right, as author, to copyright the ads or whether, under the "work made for hire" doctrine, as defined in the 1976 Act, the right to claim a copyright belonged solely to the advertisers.

The district court held that under the statute, as amended in 1976, the newspaper that developed the layouts, not the advertisers, was entitled to claim the copyright. It assessed the statutory penalty for each of the three infringing ads and awarded attorneys' fees, as yet undetermined, upon a finding of willfulness in the violations.

We affirm in all respects.

## I.

The *Beacon* employs persons capable of developing advertising layouts and supply-

ing artistic, pictorial and graphic material. The *Free Press* has no such capability. When an advertiser wishes to run an advertisement in the *Beacon* and he does not already possess a layout, employees of the *Beacon* will develop a layout meeting the advertiser's requirements. In those instances, the *Beacon* claims the copyright. It included notice of its copyright claim upon each of the advertisements involved in this litigation, as well as its general copyright notice of the contents of the newspaper.

The *Free Press* reproduced the three advertisements, deleting the *Beacon*'s copyright notice, but otherwise making no change in two of them and slight change in the third.

## II.

Under the 1909 Act, the "work made for hire" doctrine flourished. Of course, employers were regarded as the authors, or creators, of works prepared by their employees in the course of their employment, but the doctrine extended far afield to reach works created or prepared on commission. While the stated endeavor was to ascertain and enforce the intention of the parties, the usual presumption was that the commissioner held a copyright upon any work created by another at the instance of the commissioner, at the commissioner's expense, and for his benefit. *See generally* 1 M. Nimmer, Nimmer on Copyright § 5.03[B][2][c] (1985) (discussing commissioned works). Before 1978, it mattered little, if at all, that the commissioner neither possessed nor exercised the right to direct the manner in which the work was done.

When such rules prevailed, there was little surprise in the holding that the right to copyright belonged to the advertiser, even though his advertisement was designed and prepared by the employees of the newspaper. *See Brattleboro Publishing Co. v. Winmill Publishing Corp.*, 369 F.2d 565 (2d Cir.1966). It was thought inequitable to small businessmen, who probably knew nothing of copyright law, to hold that the newspaper could copyright advertisements prepared by the newspaper and prevent the advertisers' subsequent use of it elsewhere. In that case, it appeared that the advertisers had never been informed of the newspaper's claim of the right to copyright the advertisements.

In 1969, Judge Friendly wondered whether Congress could possibly have intended this expansive application of the work made for hire doctrine. Under Article I, § 8 of the Constitution, Congress is authorized to enact legislation securing to authors the exclusive right to their work, but the work made for hire doctrine protected employers of authors and those who commissioned others to write, paint, sculpt, or compose for them. Judge Friendly recognized that the extension of such protection, to some extent, was essential, but he thought that such extension should be limited to situations in which the court could fairly imply an intention on the part of the actual author to assign the copyright. *Scherr v. Universal Match Corp.*, 417 F.2d 497, 502 (2d Cir.1969) (Friendly, J., dissenting), *cert. denied*, 397 U.S. 936, 90 S.Ct. 945, 25 L.Ed.2d 116 (1970).

In 1976, Congress substantially rewrote the Copyright Act and made the new statute effective on January 1, 1978. For the first time it included a statutory definition of "work made for hire," which reads in pertinent part:

(1) a work prepared by an employee within the scope of his or her employment; or

(2) a work specially ordered or commissioned for use as a contribution to a collective work, as a part of a motion picture or other audio-visual work, as a translation, as a supplementary work, as a compilation, as an instructional text, as a test, as answer material for a test, or as an atlas, if the parties expressly agree in a written instrument signed by them

that the work shall be considered a work made for hire....

17 U.S.C.A. § 101 (West 1977).

The second part of the definition has no application to this case. Even if the newspaper is a collective work or a compilation, there was no agreement signed by the newspaper and advertiser designating these advertisements as works for hire. This part of the definition is permissive only and is effective only if both parties execute a written agreement that the work is for hire.

Part one, of course, preserves the old rule that a work prepared by an employee within the scope of his employment is a work made for hire. As Professor Nimmer observes, however, the Copyright Act contains no definition of the term "employee" or "scope of employment." 1 M. Nimmer, *supra*, § 5.03[B][1]. The meaning of those terms is to be derived from the general law of agency.

Those who prepared these advertisements for publication were employees of the *Beacon,* and the work for hire doctrine vests the right to copyright in the newspaper publisher. In the circumstances of this case, nothing suggests that *Beacon*'s employees who prepared the advertisements were employees of the advertisers working in the scope of their employment by the advertisers. The result of *Brattleboro Publishing Co.* was not based upon an assumption of any such employment. It was based upon the old doctrine of commissioned work, which is inapplicable here under the current statute because of the absence of a signed, written agreement.

In some circumstances, temporary and transitory situations exist in which an employee of one may be regarded as an employee of another. An example was presented in *Aldon Accessories Ltd. v. Spiegel, Inc.,* 738 F.2d 548 (2d Cir.), *cert. denied,* 469 U.S. 982, 105 S.Ct. 387, 83 L.Ed.2d 321 (1984). In that case, an official of the plaintiff conceived an idea of developing and marketing statuettes of a unicorn and of a Pegasus. He submitted sketches of his mythological horselike creatures, rearing with forefeet extended and their full tails resting on the base, to a Japanese firm producing porcelain statuettes and to a Taiwanese firm producing brass statuettes. While he was not an artist or a sculptor, in each instance he spent days working closely with Japanese or Taiwanese artists and artisans to produce a clay model that satisfied his expectations. In each instance, a clay model was prepared after which Ginsberg, Aldon's official, directed alterations and adjustments in the shapes, attitudes and proportions. In great detail he directed such things as a movement of a leg and alterations of the attitude of the head, or the flow of the mane. All of the work producing the clay models was done in his presence and under his immediate direction. There was abundant basis for the court's conclusion that Ginsberg had exercised the right to direct the manner in which the work was performed. He had much more than the right of approval or rejection while he was directing the artists and artisans in every step of the process of creating a model that was satisfactory to him. The court concluded that the Japanese and Taiwanese artists and artisans, under those circumstances, were temporary employees of Aldon's, acting in the scope of their employment in producing the clay models. The court concluded that Aldon had the right to copyright the porcelain and brass figurines. They bore a copyright notice.

There are no comparable circumstances here. Without doubt the advertisers told the *Beacon* what they wanted, but there is no suggestion that they supervised *Beacon* employees as they developed the advertisements or directed the manner of the work's completion.

In a case involving facts similar to this case, a district court in Louisiana held that the copyright belonged to the advertiser. *Canfield v. The Ponchatoula Times,* No. 83–3000, slip op. (E.D.La. June 6, 1984). The court reasoned that to hold that the

preparer had the copyright would produce an absurd result. The absurd result was that whenever the advertisement was prepared by a third party, such as an advertising agency, publication of the advertisement would infringe the copyright. The assumed absurdity is untrue, of course. The copyright is not infringed when the advertisement is published in accordance with the intention of the parties. The advertiser unquestionably has a license to do that.

When the *Canfield* case was appealed to the Court of Appeals for the Fifth Circuit, it expressly declined to pass upon the ownership of the copyright but held the copyright invalid because of insufficiency of notice. *Canfield v. The Ponchatoula Times*, 759 F.2d 493 (5th Cir.1985). Unlike the situation here, there was no individual copyright notice on the advertisement, as required by 17 U.S.C.A. § 404(a) (West 1977).

The presence of a copyright notice on each copyrighted advertisement in the *Beacon* may alleviate substantially the concern of the court in *Brattleboro Publishing Co.* The advertisers are not left in a continuing state of ignorance about the copyright claims of the newspaper.

Moreover, the only person with any incentive to enforce the copyright is the publisher of the newspaper. Short of some possible misuse, the advertiser has no incentive to prevent republication by another newspaper at a very cheap rate, but the newspaper publisher may understandably be concerned about what it regards as unfair competition.

■ Considerations of fairness and appropriateness, however, are of little concern here. Congress has made the choice, and it is for us to apply the statute as the Congress intended. As rewritten in 1976, the Copyright Act requires the conclusion that the copyright is owned by the newspaper publisher whose employees prepared it, unless there is a written agreement signed by it and the advertiser that the work should be considered work for hire.

### III.

■ The district court absolved the publisher of the *Free Press* from any personal liability. She had the largest financial investment in the *Free Press* and the nominal title of publisher, but she had no real authority and her few duties were menial.

■ In addition to statutory penalties, the district court held that the infringements were willful and awarded attorneys' fees, the amount of which is yet to be determined.

We affirm both of these rulings.

The case is to be remanded for further proceedings to determine and assess the attorneys' fees.

AFFIRMED AND REMANDED.

K.K. HALL, Circuit Judge, dissenting:

I cannot agree with the majority's conclusion that the copyrights in this case are owned by the publisher of the newspaper whose staff prepared the ads. For this reason, I respectfully dissent.

Neither the language of the amended statute nor its legislative history convinces me that Congress intended to change the employer-employee relationship for copyright purposes or to construe it so narrowly as to mandate the result reached by the majority in this case. In my view, the district court in *Canfield v. The Ponchatoula Times*, C/A No. 83–3000 (E.D.La. June 6, 1984), *aff'd on other grounds*, 759 F.2d 493 (5th Cir.1985), correctly decided this issue, when it held that under the 1976 Copyright Act, as under the previous statute, the advertiser—not the newspaper—is the copyright owner of an ad commissioned by the advertiser but designed, prepared, and printed by the newspaper.

As the district court in *Canfield* noted, the arrangement between an advertiser

and a newspaper which creates and runs the ad is not a traditional employer-employee relationship. Nevertheless, the ads in this case, as in *Canfield,* were created at the insistence and expense of the advertisers, who retained the right to control and supervise both the nature and content of the ads. In fact, one of the advertisers in the instant case, the co-owner of a car dealership, originated a slogan used in his ad. Regardless of whether the advertiser's control is ever exercised, however, the only rational conclusion is that Congress under the 1976 Act intended for the ad produced by the newspaper to be a work made for hire. *See Aldon Accessories Ltd. v. Spiegel, Inc.,* 738 F.2d 548 (2d Cir.), *cert. denied,* 469 U.S. 982, 105 S.Ct. 387, 83 L.Ed.2d 321 (1984); *Peregrine v. Lauren Corp.,* 601 F.Supp. 828 (D.Colo.1985).

This conclusion is fully supported by the language of Section 201(b) of the 1976 Copyright Act and its legislative history. 17 U.S.C. § 201(b) provides that:

In the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author for purposes of this title, and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright.

Comments contained in the House Report accompanying this section confirm that:

Section 201(b) of the bill adopts one of the basic principles of the present law: that in the case of works made for hire the employer is considered the author of the work, and is regarded as the initial owner of copyright unless there has been an agreement otherwise. The subsection also requires that any agreement under which the employee is to own rights be in writing and signed by the parties.

H.R.Rep. No. 1476, 94th Cong., 2d Sess. 121 (1976), *reprinted in* 1976 U.S.Code Cong. & Ad.News 5659, 5736. The House Report further demonstrates Congress' rejection of certain amendments to the work-made-for-hire doctrine proposed by motion picture screenwriters and composers:

Their proposal was for the recognition of something similar to the 'shop right' doctrine of patent law: with some exceptions, the employer would acquire the right to use the employee's work to the extent needed for purposes of his regular business, but the employee would retain all other rights as long as he or she refrained from the authorizing of competing uses. However, while this change might theoretically improve the bargaining position of screenwriters and others as a group, the practical benefits that individual authors would receive are highly conjectural. The pesumption [sic] that initial ownership rights vest in the employer for hire is well established in American copyright law, and to exchange that for the uncertainties of the shop right doctrine would not only be of dubious value to employers and employees alike, but might also reopen a number of other issues.

*Id.* at 5737.

Despite the majority's conclusion to the contrary, its holding in favor of the *Beacon* does produce an absurd result, whereby the advertisers become infringers of the party they hired to produce their ads. Surely, this result was not what Congress intended when it passed the 1976 amendments, as demonstrated by its specific rejection of the shop right doctrine.

For the foregoing reasons, I would reverse the judgment of the district court.